May it please the court, my name is Tony Jobe. I represent the plaintiff, Violeta Escobar Klein, and we're here to decide the most important issue that has to be decided, I believe, is simply whether or not the federal preemption statute, in fact today, is 44-112. And the problem with it was that all the competent evidence that we have, whether it's the lease or the operating agreement or the amended lease, all gave the owner of Nevada Leasing the right to do whatever he needed to do with this helicopter at any time. And what's really unusual, where does it say that? The operating agreement at 4.7 between the lessee and the lessor specifies the power granted to the majority owner, Mr. Chevalier, in paragraph B, that he has the right to manage and operate any company property or asset, and he had the exclusive power to perform all of necessary functions from day-to-day operations of the company of leasing and the business of assets. And what's really interesting, Nevada Leasing Company, so what he has a right to do is to do everything with regard to leasing, right? Well, this is very unusual because we essentially have a mom-and-pop shop, not a big bank or financial institution, which is why, that's one big legal reason why Nevada Leasing does not qualify immunity for liability under 49 U.S.C. section 44112. The case law is clear that you have to have the financial asset under your name. So, the day that he got the helicopter, and first of all, you have to remember he bought the helicopter through Nevada Leasing. Who's he? Mr. Chevalier. David Chevalier. He's the 89.5% owner. But you say you're not piercing the corporate veil? No, no. That's not our case at all. Okay, so what's your case? It's just, you know, somebody could maybe make that argument. We never made that argument. So, we're really here only on the issue how you interpret, you know, the statute. It's very simple. It's not being interpreted, at least . . . It has to be actual control or possession, right? Correct. When you read the briefs the defendants have filed, they put words ahead of that phrase and after that phrase, and those words don't exist in the statute. But it has to be actual control or possession of the helicopter at the time of the crash, right? No. That's where . . . Not of the helicopter? No. Actual control or possession of what? Of the ownership rights to make the decisions to take the helicopter back off the lease, you know, and say you no longer can operate it. Because the statute used to say under 1404, back in the 50s, that you did have to have actual control at the time of the accident. Congress amended the statute in the 90s. We now have 44-112. And 44-112 doesn't say that. They took it specifically out because they wanted to be broad enough for the leasing company to operate its assets the way they wanted to. And so, the defendant has taken the position in their briefs, it's really pretty simple, that we should have . . . to exercise actual control or possession at the time of the crash. The statute doesn't say that at all. They put words back in from the 50s that don't apply anymore. So, I think it's this very singular, simple issue of misinterpretation of the actual words of the statute. And the statute in the case law now says that we've cited that financial lessors like big banks and leasing companies, which 44-112 were designed for, are the only ones that are qualified for immunity under the federal statute. They were trying to encourage the growth of airlines after World War II and subsequently. But they clearly, the case law, the controls that we've cited, just either makes the mistake of thinking it's like you said, Your Honor, that they have to do exercise something or they have to be at the time of the crash. In this case, Mr. Chevalier and his company were at the same Maui Airport. Well, what does actual possession or control mean then? It just means that it's a noun, not a verb. There's no real . . . What's noun, not a verb? Actual possession or control are used as nouns. Only way you can turn them into a verb is to say that they had to do something at a certain time to prevent it. Actual is a legal term in the way that Congress uses it. Do you have the documents, and we do have the documents, these agreements, the lease, the operating agreement, the amended lease, all these documents . . . So even if they lease the . . . I understand that these people are all interrelated, but let's leave that aside for now. Yeah, but they operated this correctly. They did everything right. It's just the negligence was he made the decision to keep flying a defective helicopter that he testified . . . Who's he? Mr. Chevalier. In the deposition of Mr. Chevalier, he admitted that he had the right to cancel under either capacity, but he also admitted in the deposition that we cited in our brief, that he admits to the fact that he knew this helicopter had failures in the tail, almost brand new, in Europe. And before this crash occurred, the Federal Aviation Administration issued a mandatory airworthiness directive, which warned of this danger in the tail and required that all these fixes had to be made to it. But the fixes didn't seem to be preventing the fact that the tail falls off. The tail was found 900 feet from their main wreckage. But more importantly, we later found out in the discovery with Airbus that one of the rotor blades delaminated. And when one rotor blade delaminates, it causes the other blades to go out of track. When it goes out of track, it puts a lot of stress on the tail rotor. The tail rotor is under-designed already. That's the problem our experts testified to in the Airbus case. And basically, it applies here. And he admitted he knew about these ADs, he knew about the problems in Europe, and he still kept flying. But he's the one that can take it out of service. But of course, he could have acted either way because he owned both companies. But he kept all the formalities of corporation. You're not reliant on an alter ego theory. So what does it matter that he owned both companies? It doesn't. It's just that he never made the decision to remove the helicopter from the flight line and do something about it, either give it back to the manufacturer or make them fix it. You know, just like on automobiles, you know, some of these automobile recalls are very dangerous and have to be met. So he just never made that choice. The leasing companies are responsible. If they don't qualify for liability under state law, which you have right here in Hawaii, if the federal law doesn't apply. Well, the way they rewrote the federal law and took out all this business about exercise at some time or at the time of the crash, all that's gone. All that's left is actual, which I And then the next word, possession, which means like ownership documents. Is it really your, who owns this at the end of the day? Right now, in this case specifically, that's going to, that we want to get back to take to trial. The vital leasing control was the ultimate controller of their ownership interest in the helicopter and could have the authority to take it back from Blue Hawaiian, so they wouldn't keep flying it. It was obvious Mr. Chevalier wasn't going to make that decision. Are you arguing that this is a question of facts to go to the jury? Yes, it really is. A lot, all these facts need to go back to the jury, which we got deprived of. So, I mean, really it was the, it's a summary dismissal. So it's, all these facts are material facts that are in dispute and the jury never got a chance to decide them. And I'm sure the jury here in Hawaii with a lot of helicopter accidents over the last decades, written up by the NTSB and everybody else, would be interested in doing the safe thing. And the safe thing didn't happen. So whether this statute was read correctly is very important, at least at the summary judgment level. So it doesn't mean that you have to go fly it. You just have to say you can't fly it anymore. So, A, it's Mr. Chevalier and his deposition. So, but did, sorry, let me just get my little diagram here. So, at the time of the accident, could, did Nevada leasing have the power to say this aircraft should not be flown? It had the power to do it before, during, and after. All the time it had the power to say no. Would that come under possession or control? Both. They own it and they control the right under the leasing documents, which is again contract, like I've been hearing about this morning in these other cases. The provisions are very clear. For example, the operating agreement at 4.7 of the agreement between the lessor and the lessee, that's Nevada leasing and Blue Hawaiian, specifies the power granted to Mr. Chevalier as a majority owner and manager of Nevada leasing. At paragraph B, it provides Mr. Chevalier has the power. And where are we now, 4 what? It's operating agreement at provision 4.7. It's in our briefs and it's in the documents of record. Counsel, what's your basis for making the distinction between physical possession and legal possession? If the legal possession, do you see the legal possession as being different than the physical possession for purposes of the statute? Well, as two concepts, it's different. Is legal possession, in your view, sufficient to meet the statute as opposed to physical possession of the aircraft? Well, I think what the statute says is does the leasing company have actual possession, which is a legal term. But what lets us know that it's the legal idea of possession as opposed to the physical idea of possession? What lets us know that? What helps you figure that out is go on with the statute or control. Right. I get the or control, but I don't get your argument regarding possession being legal possession as opposed to physical possession. Because to me, physical possession is more related to control in terms of being able to dictate when the plane flies or doesn't fly. The statute and the cases we've cited don't deal with possession with the leasing companies under anything other than they have the contractual rights to possess it, take it back in, repair it. All these provisions, I could read them to you. What case can I read that will assure me that the term possession in the statute refers to legal possession as opposed to physical possession? You know, I don't think you're going to see, maybe not use the exact language you just used, but the result is what I'm saying, that if they had the legal right to take the plane back or the helicopter back, then it's up to them to make an intelligent decision about safety, not leave a defective product out there. You're arguing it's a matter of logic rather than any cases that are said? No. There's cases that say . . . First of all, you got to remember we're on summary judgment. Yeah, but we look at cases on summary judgment. Yeah. Huh? We look at cases on summary judgment. Oh, I know you do. Conflicting testimony is sine qua non of a case inappropriate for resolution on summary judgment. That's direct text versus electric arts at 836 . . . That wasn't the question I had, so I guess the answer is there is no case that tells us whether possession means legal possession or physical possession. This would be essentially a landmark case, but it would apply to these specific facts only. I mean, we're not dealing with a big bank or leasing company. Can I ask you a question? The ultimate backdrop problem here is that if this were all one company, then you couldn't bring this case because it'd be a workers' comp problem. Well, but we don't have that. The workers' comp case was settled way before this case . . . But you couldn't sue Nevada Leasing separately if it were the same company as Blue Hawaiian? If I wanted to, yeah, but that's not what we chose to do. You couldn't. You could not do that, right? Legally, we have the right to bring an action, and that's what these cases stand for on federal conflict preemption on this statute for leasing companies. All right, but so then you're saying that the proof of the possession and control is powers of managers 4.7 of the operating company, but it doesn't say anything about who gets control or possess an already leased helicopter, if the leasing agreement doesn't give it the authority to do it. It does. The lease gives it authority because the lease . . . So it's the lease that matters, not this document. No, the lease . . . All these documents matter. They all have to be read together, you see, and so they've done this thing exactly right. If they want to do this, the only thing is they should have taken the helicopter back, but here's what happens. The lease gives the right for Babata Leasing to lease to Blue Hawaiian this helicopter, okay? Then the operating agreement who grants rights to the owner and the managers, which is Mr. Chevalier himself in both cases . . . Do what? Huh? He's the president and CEO. Okay, but what does the operating document give the right to do with regard to leased aircraft if they're leased aircraft or under control of somebody else? The operating agreement prohibits it being under the control of anybody. How? But the person, the company they're leasing it to, Blue Hawaiian, and the company that owns it, Babata Leasing, that's the beginning and the end of that. So it's unambiguous language that after Babata Leasing went one step further and gave it security interest, because the FAA requires you to file a document if you own it, that you own this helicopter, it's an actual operating certificate, it's granted to you, and they granted the security interest, which the money came from the First Bank of Hawaii. The Babata Leasing didn't have any money in this other than what Blue Hawaiian was doing was standing like a mortgagee who's got collateral to get a loan. And the collateral was the cash flow of Blue Hawaiian. Chancellor, you're well over your time. Let's hear from the other side. Okay. Thank you. Good morning, Your Honors. Thank you very much. May it please the Court. My name is Patrick Kearns. I represent Babata Leasing. I would like to address a couple of things that Mr. Jobes said, and I think that I can answer for the Court rather quickly and perhaps bring this back around to what is really at issue in the case. Judge Rawlinson, to answer your question, there is no case that says that . . . well, actually, both you and Judge Berzon asked a similar question, but there is no case that says legal possession for whatever that means or legal control for whatever that means is what's at issue in the statute. In fact, if there was, that would be remarkable because it would be completely contrary to the entire body of law, as limited as that is, completely contrary to the entire body of law which underpins this statute. There was a question from the bench that said, how are we supposed to know? What can I look to to find out whether we're supposed to be looking at legal versus actual possession? And I'll tell you, I think the answer is relatively straightforward. We look to the plain language of the statute and the legislative history. When you look at the legislative history of Section 44112, it tells you that it's designed to provide absolute immunity for lessers of aircraft for the purposes of allowing more people, and I'm going to summarize here, more people to get into the aviation business. Aircraft are very expensive, liability is very high, nobody wanted to purchase these things because their liability would exceed their investment. So Congress stepped in and said, we will provide immunity to those who are willing to do it and lease it out. That tells you something about what they meant about actual physical possession. And Judge Gilmour, in her opinion here, granting summary judgment, she did a very, very good job of going through what she called and what many other courts have called plainly unambiguous language, which is a lesser of an aircraft to another party is not liable for injuries or death unless they have physical, actual control. Well, it doesn't say physical, it says actual. I'm sorry, actual control or possession. I mean, what is odd about the language here is that there's sort of a temporal gap in that it doesn't say that the time of the possession or control or the connection between the possession, it doesn't say there has to be any connection between the actual possession or control and the personal injury or death. It doesn't say that the possession or control has to be at the time of the personal injury or death. It's sort of weird in that way. I think it's weird, Your Honor, only if you're looking for the ambiguity that Mr. Jobe is looking for, because I forget Mr. Jobe. I mean, it's not there, is it? No, of course not. You're absolutely right. There is certainly no statement in the statute that says at the time. However, if you, let's presume that it isn't at the time. Let's presume that it's at any time. So the opposite of being it at the time of the accident, then what you have is a statute that's meaningless. Now, imagine any company that... What the statute is talking about, and you start out down this line, is actual possession or control is a factual question, right? Or at least mixed question of law and fact. What does possession mean? What does control mean? I'm not sure if it is, Your Honor. Here is actually, this is a great example of this case. There is no dispute about the facts in this case. Everybody agrees on what the A, B, and C building blocks of the case are. The two sides disagree what that means. They disagree what control means. There's no question, for example, I'll explain. There's no dispute in this case that the two entities are separate legal entities. One is a separate legal entity in Nevada. One is a helicopter operation company. Is there any dispute that Nevada leasing could have instructed Blue Hawaiian not to buy the helicopter because it had some problems with the tail wing? Dispute would be the wrong way to put it. There's no question. I agree with Mr. Job that Mr. Chevalier testified in deposition that he believed he had the ability to cancel a flight under... I don't have the exact language, but I believe he said... Cancel a flight. Isn't that control? A certain level of control. I would agree. Yes. But what he actually said was that as the chief executive officer of Blue Hawaiian or as the owner of Manager in Hawaii, in either of those roles, did he have the authority? And he said, yes. Well, in one of those roles, he clearly did have the authority. Sure. Right? Yes. He didn't say in both of those roles. He said in either of the roles. I agree. So he didn't say that. Well, it's actually ambiguous whether he meant either of them meant both or either of them meant each one. I think that's, I think that's absolutely true. That's what that leads to the notion that if that's just positive, there should be a trial. I don't think so, Your Honor. There's other steps. This is just, this is one little issue because what that requires... But why isn't that the key question? The key question is, could he have, did he have the authority to cancel the flight? Isn't that, why not? I don't believe that is the key question. I think we have to keep in mind here that the statute talks about lessors. The statute talks about someone or a company that leases these helicopters long-term. But you can be a lessor and still retain actual possession or, and or control over the plane at any given moment in time. So just saying that's a lessor isn't the end of the inquiry. I don't think it is. What I think is that a, being a lessor at all in any situation, or at least any that I can think of as I stand here, necessarily presumes some level of control. Otherwise it wouldn't be a lease. This is complicated by the fact that the individuals involved all occupy, you know, various controlling type roles in both of the companies. It is, Your Honor, but I think that it gets uncomplicated if we look back at what we're actually trying to apply here. The basic elements of Section 44112 don't ask about those details. It doesn't require them in order for that to apply. It is a factual question. Otherwise you'd be saying it's a legal question. And you started out by saying it's not. I think if we disputed, for example, whether Mr. Chevalier had some type of ability to have an impact or have an interest or, or cancel a flight or something. If we disputed that, that would be a true, factual issue that a jury would have to decide. But you don't dispute that Mr. Chevalier could control whether the plane, I mean, I don't know if you want to go there because then maybe some of your judgment should have been granted the other way. Yeah, and that's not what I'm saying, Your Honor. Yeah, I know, I hope that's not what you're saying for your position. No, that's, that's not what I'm saying at all. What I'm saying is that in any lease situation, there's going to be an owner somewhere that has some level of control. And the plaintiff's argument here is based on the idea that any bit of control, any small bit of control anywhere in the scheme. Well, the authority to cancel the flight that caused the accident isn't just a small amount of control. Is there any authority in, he said that, or let's assume, I mean, I think he was ambiguous whether he said that. But assume he said that, is there, A, is that dispositive and why not? No, there, there's, listen, we're talking about one, one statement during deposition testimony that frankly I think is being taken out of context. Let's keep in mind that Nevada leasing is not a helicopter operation. Um, Blue Hawaiian Helicopter. Well, you think he's wrong. In other words, he didn't have the authority. I think it would be complicated for a company that doesn't operate helicopters to get into the helicopter business. This is a Part 135 operation. And of course the problem here is that it's Mr. Chevalier putting on hats. That here's a hat, here's a hat. And, and, and a layperson answering a loaded question at a deposition. That's, you know, and that creates the ambiguity. That happens every day. Every day. So that's not a. Is there anything in the documents that would support the conclusion that he had the authority to cancel the flight? Or anything that's, that he didn't have the, the authority to cancel the flight? That he did not have the, I'm sorry. Your, your position is that even if he said that, he actually didn't have the authority to cancel the flight. Is that. My position is that Nevada leasing as a, Mr. Chevalier is not being sued. Nevada leasing is being sued. My position is that in that circumstance, they have some ownership retention that's specified in the lease. But they've taken, as Mr. Job said, they, they actually followed all the little rules. They complied with all the details. They've taken every step to identify the parameters here. The same lease, by the way, the same lease agreement that upon which plaintiffs rely for this particular claim. Well, also specifically. They rely on the operating agreement. I don't, as far as I know, they're not relying on the lease agreement. Well, I'm, I'm, I'm sorry then. I'm, I'm referring to their, they, they rely on the release agreement in their briefs, in the lease agreement in their briefs for the co-management portions and the, well, at least that aspect of their argument. But that same agreement, these same agreements, there's no, there's no dispute here that Nevada leasing owns the helicopters. There's no dispute that they lease them to Blue Hawaiian. It's in that same agreement. It says specifically that Blue Hawaiian shall maintain sole possession, custody and control. They shall operate it. They shall comply with the FAA. They shall comply with all airworthiness directives and service bulletins and all the, they do all the maintenance on the, on the helicopter. So if we're talking about legal possession or legal control, yes. The question is what really was happening. What, what, I'm sorry? Notwithstanding what was in the lease, the question is what was actually happening. Your Honor, I couldn't agree more. I couldn't agree more. The, this is a, the In re Lawrence versus In low case. It was cited both in our brief, but also by Judge Gilmore. This is one of the more, I think, more applicable, more analogous cases from a construction standpoint. It was from the Southern District of Indiana. In any event, that court was one of the few courts to look at this and identify this exact problem. When, when, when Congress makes a relatively clear statement, it says lessors who don't have control over helicopters that they lease out shouldn't be liable for their injuries. And then someone comes along and says, well, what's control? In the In re Lawrence case, the court said liability is prevented on lessors. And I'm not, I'm not quoting there, but here's the quotable part. They said, lessor the imposition of liability is prevented on lessors that are not engaged in some concrete fashion in the operation of the aircraft. Now doesn't that make sense? Doesn't that fit in exactly with the rubric of what Congress was trying to do? Well, as I understand the evidence here, there was some evidence that with his Nevada leasing hat on, Mr. Chevalier knew about some problems with this helicopter. Is that right? I disagree with that characterization, Your Honor. There was some evidence that Blue Hawaiian, as they are required to do, both as a Part 135 operator and as the lessee, that they had received notifications that operators will occasionally receive, airworthiness directives from the FAA and things of that nature. But not Nevada leasing? Nevada leasing does not. That's absolutely correct. They do not. They could not. They're not an operator. Let me ask you a question. Is there a FAR Part 135 document, Exhibit 4, that talks about operational control? Was that a document that was submitted by Nevada leasing to the FAA? Which document? The document that talks about operational control for purposes of complying with the federal aviation regulations. The document that I was just referencing? I'm reading from Chevalier's testimony. Where he was talking about having listed himself as the person who was responsible for operational control in a document filed with the FAA. Okay, that would have been Blue Hawaiian. Blue Hawaiian has the certificate for 14 CFR 135. They're the certificate holder in order to fly helicopter operations on a commercial basis. Nevada leasing is not. Nevada leasing is a leasing company. I have to look at that document, but because he's asked, he would, he's asked if there's some safety issue that came to your attention that you are aware of. You certainly had the operational control to make the final decision. He says yes. And that wouldn't make any difference whether you were the CEO or you were just given that authority by the FAA, you would just make it, right? I would agree with that. I would agree with that statement. Okay. I think Mr. Chevalier, as a sensible guy trying to do the safety thing, he has the ability, he owns or operates Blue Hawaiian. Yeah, I would think he would want to have that. Yes, of course. Of course. Of course. But no matter which hat he was wearing, he would want to make sure his helicopter was safe. And I'm sure that that was the basis for his answer. I'm sure of it. All right, thank you, counsel. I'll give you one minute for rebuttal. Thank you, Your Honors. Appreciate it. Thank you. Aviation law, which I've been doing for a long time, can be confusing for judges too, as well as individual people and people who operate airlines. The FAA document is a license that you have to get from the FAA to be the operator in a 135 carrying passengers for hire, like Blue Hawaiian did, to fly. But that doesn't have anything to do, really, with what we're here about, because it's really what's in the lease, the amended lease. These are dolled separate documents. The lease itself, we cite it and give you exact references to it. What is in the lease that supports your position? What's in the lease? That's what we were talking about. Or the amended lease. I'm sorry, what? You were talking about the operating agreement earlier. Yeah. What about the lease or the amended lease? Yeah, I talked about the operating agreement first. The lease at provision, there's two leases, okay? There's an initial lease, which they just call essentially a lease. And then there was an amended lease and- Presumably, it's the amended lease that's relevant, no? No, they're all relevant, because they did different things. That's why you have to look at it. I'm trying to kind of lead you through this. The amended lease, it doesn't overtake the original lease? No, because here's what's complicated about all this. There are various provisions from a leasing company and or the operating company of things that go on, like maintenance. Tell me what section of one of the leases supports you. The controlling conditions of the lease at provision 11. Assert Nevada leasing's authority to control modifications. They'll have the authority to control the number of hours flown and reserve the authority to monitor the operation of the lease. And the lease are- They're to be read together. You know, these- And the lease, excuse me. Yeah, I'm sorry. The lease or the amended lease? Well, you asked me about the lease. I want to know which one are you talking about now? I'm talking about the lease. The lease, okay. Okay. Even though it's been superseded, all right. And so, basically- Was the lease superseded? Well, you have an amended lease, but he wants us to look at the lease, which is not the lease. Sometimes it's an amended lease will supersede, and sometimes it won't. Well, that's right, but it doesn't- So, what does it do here? It's just another variation of things that were happening. For example, Nevada Leasing gave its security interest that it had as the owner, the actual physical owner from the FAA. They owned it, but Nevada Leasing had a Part 135 certificate. And so, anyway, they gave their security interest to the Bank of Hawaii. So, but these documents, the lease gives provisions for Nevada Leasing to come in and do all the things I was just reading about. The amended lease gives them other provisions. It's all in the brief. And so, they have to be read together. There's nothing exclusive. Okay, tell me where in section 11 of the lease, which is what you started from. Okay, sure. There is a provision that gives the lessor actual possession or control. Okay, at provision 11. I'm in provision 11. Okay, Nevada Leasing- A, B, C, D, or E, which one? Can I just say this a little lead in? Assert its authority to control modifications to the helicopter. Assert its authority to control the number of hours flown. Reserve the right to- Well, where? I don't see those. I see that it says you can- I'm going to get there. All right, well, read it to me. Where is it? It's at provision 17. Nevada Leasing maintains the right to inspect, perform maintenance, conduct repairs. And the plain language of the contractual lease places Nevada Leasing in actual control of the helicopter during the terms of the lease. So, that's where that is. All right, but you're not reading from the lease. Okay. So, the thing that would be helpful is if you would say the paragraph, or the page, or the subsection- Or the words. Or the words. So, why don't you, we're going to submit this case. And you may submit a letter, a supplemental letter brief, both of you, explaining what provisions of the lease you think, and the amended lease, support your position. It's in our brief, but- Right, but maybe just put in a letter, focus it. It is complicated. Okay, but we don't need to talk anymore today about this. We will get a supplemental brief in seven days from today on this point. Okay, I've got to get home, probably out of New Orleans. Could I have a little longer? Two weeks from today, all right? Thank you very much. We've got to get home, too. Okay, yeah. All right. Look out for those leis, I'll see you later. Yeah, thank you. I am grateful for the leis, they are beautiful. I didn't realize I would have this reaction to the leis. Okay, Escobar versus Nevada helicopter leasing.
judges: Wardlaw, Berzon, Rawlinson